Jerry Campbell was awarded $5,000 in compensatory damages and $10,000 in punitive damages in his suit against Dwight and Lendon Brown and their company, Brown Tables, Inc., for fraud and conversion of a stock certificate that the company *Page 921 
issued. The jury returned a verdict in favor of Brown Tables, Inc., but against both Dwight and Lendon Brown. Campbell's suit alleged that the Browns had fraudulently induced him to transfer his 250 shares of stock in Brown Tables, Inc., and had converted his certificate (representing 20% of the corporation) during the period from July 10, 1986, to November 5, 1986. The trial court denied the Browns' motion for new trial. They appeal, raising two issues. They argue that Campbell failed to prove damages on both the conversion claim and on the fraud claim and that he presented no evidence that they converted his stock certificate.
Campbell began working for Brown Tables, Inc., in March of 1985 as plant manager. Dwight Brown was president and Lendon Brown was vice president of the company. Campbell was issued a certificate for 250 shares of the company's stock in addition to his salary. According to the Browns, they had 500 shares each, making a total of 1,250 shares outstanding; however, the certificates representing these shares were not available at trial and are not contained in the record. Testimony was conflicting as to whether Campbell bought or was given the stock. Dwight Brown stated in his deposition that he sold the stock to Campbell at $40.00 a share; however, he testified at trial that he gave Campbell the stock "out of the goodness of [his] heart." Sometime in 1986, the Browns told Campbell that First National Bank of Florence had requested that all of the corporation's stock be pledged as collateral for a loan, and they asked him to transfer all of his stock to the corporation, which he did on June 10, 1986. On June 11, 1986, the Browns fired Campbell. About one and a half weeks later, Campbell asked them to return his certificate and was told that they could not find it but that their attorney might have it. Campbell then asked their attorney for the certificate; it was returned to Campbell by the attorney November 5, 1986, some three weeks after he had sued the Browns and Brown Tables, Inc.
Prior to trial, which occurred on February 2, 1987, the Browns sold all of the assets of Brown Tables, Inc., except accounts receivable, to another manufacturing company for $20,000. The Browns contended at trial that they simultaneously issued themselves 4,375 shares each when they issued Campbell his shares; however, in his deposition, Dwight Brown stated that he did not remember issuing any more stock at the time Campbell received his. The certificates for the Browns' shares are in the record but are undated. Bill Weaver, the loan officer at First National Bank of Florence, denied having ever asked the Browns to pledge all of the stock of Brown Tables, Inc., as collateral for a loan.
The Browns argue that mere possession of Campbell's certificate by them did not constitute conversion absent an illegal misuse of it by them. This argument fails, because a plaintiff is entitled to at least nominal damages for the interference with his right to possession of his property.Roebuck Auto Sales, Inc., v. Wallace, 293 Ala. 231,301 So.2d 546 (1974). "Possession of a chattel obtained through fraud, artifice, stealth, or trickery without consent of the owner, implied or expressed, is wrongful and will support an action for the conversion of the chattel." Ford Motor Credit Co. v.Byrd, 351 So.2d 557, 560 (Ala. 1977). Furthermore, we have written:
 "We see nothing in our cases which requires in a conversion case that the plaintiff prove that the defendant appropriated the property to his own use; rather, it is enough that he show that the defendant exercised dominion over it in exclusion or defiance of the right of the plaintiff."
Roebuck Auto Sales, Inc., v. Wallace, supra, 293 Ala. at 236,301 So.2d at 550.
The Browns also contend that the return of Campbell's certificate prior to trial precludes an action for conversion. Again, this is incorrect because the tort of conversion is complete when the property is converted.
There was clearly ample evidence that the Browns refused to surrender Campbell's certificate after he requested it,Scott Paper Co. v. Novay Cherry Barge Service, Inc.,48 Ala. App. 368, 265 So.2d 150 (1972), as well as of actual pecuniary loss by Campbell; this evidence supports *Page 922 
the award of both compensatory and punitive damages.Pihakis v. Cottrell, 286 Ala. 579, 243 So.2d 685 (1971). The measure of compensatory damages for conversion, particularly with property that fluctuates in value, is either its fair market value on the date of conversion, or its value at any time subsequent to conversion and before trial, whichever is greater, with interest from the date of the conversion; recovery of the property by the plaintiff does not bar a suit for conversion but merely reduces the plaintiff's damages by the value of the property at the time of its return. RoebuckAuto Sales, Inc. v. Wallace, supra; Ott v. Fox, 362 So.2d 836
(Ala. 1978); Semple School for Girls v. Yielding, 16 Ala. App. 584,80 So. 158 (1918); Edwards v. Vanzant, 492 So.2d 990 (Ala. 1986); Progressive Finance Co. v. Milner, 45 Ala. App. 684,236 So.2d 349 (1970). An action based on fraudulent misrepresentation, conversion, and obtaining money by false pretenses will support an award of punitive damages if such an award is supported by the evidence. Simmons Machinery Co.,Inc., v. M M Brokerage, Inc., 409 So.2d 743 (Ala. 1982). David Scott, the owner of a furniture manufacturing company, testified that sometime in 1986 the Browns priced their company to him at $1,000,000. Campbell testified that the Browns told him on July 11, 1986, when he was fired, that the company was worth between $100,000 and $500,000.
The fact that the Browns misrepresented to Campbell that the bank required the stock of Brown Tables, Inc., as collateral and the fact that Campbell presented evidence of the company's worth, both when the stock was converted and when it was returned to him, justify an award of damages in at least the amount awarded Campbell. The trial court's denial of the Browns' motion for new trial is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.