Sheila Penttala appeals from a summary judgment for David Hobbs BMW of Houston, Texas ("Hobbs"), and Price-Williams Associates, Inc. ("Price-Williams"), on her claims alleging conversion and invasion of privacy.
On August 21, 1990, Hobbs sold a 1986 Mercedes-Benz automobile to a person claiming to be Gregory Stewart, a buyer and seller of automobiles for Intermarque Automotive Company ("Intermarque"). Hobbs gave Stewart possession of the Mercedes upon receipt of a $32,000 bank draft from Stewart. Stewart's draft was dishonored, and Hobbs retained the title to the vehicle. When Hobbs was unable to locate Stewart, he employed Price-Williams, a Mobile, Alabama, repossession firm, to locate and repossess the Mercedes.
On August 28, 1990, Stewart, representing himself as Gregory Land, sold the Mercedes to Penttala, at Intermarque in Mobile, Alabama. Penttala purchased the Mercedes for $15,000 and title to her 1988 Ford Bronco truck. Stewart/Land delivered possession of the Mercedes to Penttala, but he did not deliver the certificate of title, claiming that he would have the "lien certified" and deliver the title to Penttala's financing agency. On November 20, 1990, Penttala's financing agency notified her that Intermarque had never delivered title to the Mercedes. During her search for the certificate of title, Penttala discovered that Hobbs had earlier owned the Mercedes, and she contacted the dealership. Hobbs then contacted Price-Williams and informed it of Penttala's location.
On November 23, 1990, while Penttala was dining in Orange Beach, Alabama, Price-Williams located the Mercedes and repossessed it. Price-Williams notified Penttala and the local police that it had repossessed the Mercedes on behalf of Hobbs on the same day. When it was repossessed, the Mercedes contained various items of Penttala's personal property, including a purse containing credit cards and items of identification.
Price-Williams returned the Mercedes to Hobbs. On November 27, 1990, Penttala demanded that Hobbs return the vehicle; Hobbs refused. However, Hobbs returned Penttala's personal property found in the Mercedes, by mail. Hobbs later sold the Mercedes to another dealer.
On December 14, 1990, Penttala sued Hobbs, Price-Williams, Stewart/Land, and Intermarque, alleging conversion, trespass to property, and invasion of privacy. The court entered a default judgment against Stewart/Land and Intermarque on June 25, 1991; this appeal does not involve those defendants. On March 28, 1996, the trial court, without analysis, entered a summary judgment for the remaining defendants.
Penttala appealed to the Alabama Supreme Court; that court transferred the appeal to this Court pursuant to § 12-2-7, Ala. Code 1975. Penttala argues that the summary judgment as to her conversion and invasion of privacy claims was erroneous.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima *Page 139 
facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601
(Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381
(Ala. 1986). See also Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
Ala. Code 1975, § 12-21-12, mandates that the nonmovant meet his burden by "substantial evidence." Bass v. SouthTrust Bankof Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary Judgment Under theFederal Rules: Defining Genuine Issues of Material Fact,99 F.R.D. 465, 481 (1982).
I. Conversion
 "To sustain a claim of conversion, there must be (1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property. Gray v. Liberty Nat'l Life Ins. Co., 623 So.2d 1156
(Ala. 1993); Driver v. Hice, 618 So.2d 129
(Ala.Civ.App. 1993); Gillis v. Benefit Trust Life Ins. Co., 601 So.2d 951 (Ala. 1992)."
Drennen Land Timber Co. v. Privett, 643 So.2d 1347, 1349
(Ala. 1994). Our Supreme Court has also stated that "legal title" is essential to a conversion claim:
 "Legal title with immediate right of possession by the plaintiffs to the converted property at the time of conversion is a necessary element of the conversion action. Johnson v. U-Haul of Southern Alabama, Inc., 357 So.2d 665 (Ala.Civ.App. 1978)."
Roberson v. Ammons, 477 So.2d 957, 962 (Ala. 1985).
In this case, it is undisputed that Hobbs retained the certificate of title to the Mercedes. Stewart/Land never delivered a certificate of title to Penttala. However, Penttala argues that she satisfies the element of "legal title" for her conversion claim because, she says, she is an innocent purchaser for value under Ala. Code 1975, § 7-2-403(1). In pertinent part, that statute provides: "A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." Under this statute, Penttala could acquire only what Stewart/Land could convey.
Examination of Stewart/Land's ownership interest requires a review of the Texas law governing the title and sale of automobiles. The applicable Texas law at the time of the sale from Hobbs to Stewart/Land was Tex. Civ. Stat. art. 6687-1 (West 1990). That statute specifically provides that transfer of the certificate of title is essential to the sale of a motor vehicle and that any sale in violation of that requirement is void and transfers no title. Art. 6687-1, §§ 33, 53.
Texas case law has consistently applied these sections to hold that an innocent third party who purchases a vehicle without a transfer of the certificate of title has contractual remedies only against the immediate seller, and that such a purchaser has no remedy against the actual holder of the certificate of title. See, e.g., Drake Ins. Co. v. King,606 S.W.2d 812 (Tex. 1980); Boswell v. Connell, 556 S.W.2d 624
(Tex.Civ.App. 1977); *Page 140 Ballard v. Associates Inv. Co., 368 S.W.2d 232
(Tex.Civ.App. 1963). See also Gregory v. Laird, 212 S.W.2d 193
(Tex.Civ.App.-Galveston 1948) (when buyer's sales draft was not paid and seller retained title, seller could recover possession of automobile from person who bought automobile from buyer without investigating buyer's ownership of automobile).
Because, under Texas law, art. 6687-1, supra, Stewart/Land did not receive the certificate of title, he had no title to convey to Penttala. In City Car Sales, Inc. v. McAlpin,380 So.2d 865 (Ala.Civ.App. 1979), this court, in the context of a conversion claim, discussed a similar failure to transfer title. In McAlpin, McAlpin bought an automobile from a dealer. At the time of the sale, an insurance company was lawfully holding the certificate of title. The vehicle had been stolen and eventually sold to the dealer, who sold the car to McAlpin. Although the dealer provided a bill of sale and other sales documents, it did not deliver a certificate of title to McAlpin.
After the vehicle in McAlpin was impounded by the police as stolen, the insurance company reclaimed it pursuant to the company's certificate of title, and McAlpin sued the company, alleging conversion of the vehicle. This court cited the legal requirement in Johnson, supra, that the plaintiff in a conversion case prove legal title, and it addressed the claim of conversion as follows:
 "McAlpin has not been able to show legal title at the time of the alleged conversion. American [the insurance company] introduced a certificate of title from Missouri showing an unbroken chain of title to the automobile from the original purchaser to American. It is understood that a certificate of title is only prima facie evidence of ownership, which can be contradicted by other evidence. Case v. Universal Underwriters Insurance Co., 534 S.W.2d 635 (Mo.App. 1976); Wielgorecki v. White, 133 Ga. App. 834, 212 S.E.2d 480 (1975). See Alabama Code 1975, § 32-8-39(d). However, McAlpin's only evidence to support her claim of legal title in the automobile was a bill of sale from City and a license registration from the state of Alabama. But see, State Farm Mutual Automobile Insurance Co. v. General Mutual Insurance Co., 282 Ala. 212, 210 So.2d 688 (1968). This evidence does not contradict American's certificate of title which indicates that the chain of title to the Cadillac is unbroken and that American is the present owner. McAlpin has not established legal title to the Cadillac and therefore cannot recover for conversion. We view the evidence as presenting no genuine issue of material fact."
380 So.2d at 868-69 (emphasis added). We note that Boswell,supra, also presents a close factual analog with this case and reaches a similar legal conclusion. Penttala has failed to establish legal title, as a matter of law; therefore, we conclude that, as to Penttala's claim of conversion of the Mercedes, the summary judgment is due to be affirmed.
However, Hobbs's certificate of title to the Mercedes does not defeat Penttala's conversion claim regarding her personal property. Penttala has presented substantial evidence raising a question of fact as to whether the defendants' repossession of the Mercedes was a wrongful detention of her personal property. The case of Rice v. Birmingham Coal Coke Co.,608 So.2d 713 (Ala. 1992), is particularly applicable to this issue.
In Rice, our Supreme Court considered a situation where the plaintiffs alleged that the defendant had converted the plaintiffs' mining equipment. The defendant had taken possession of the equipment at the plaintiffs' business site, including equipment that the plaintiffs claimed by way of assignment, and a trailer, which the plaintiffs claimed that they owned outright. The Court determined that the summary judgment for the defendant was correct, insofar as it related to the equipment claimed by way of assignment, because the assignments relied on by the plaintiffs were insufficient to establish their ownership of the property. However, the Court reversed the summary judgment insofar as it related to the trailer, holding that the defendant was liable for conversion of the trailer even if it properly took possession of the other equipment. *Page 141 
In light of Rice, we conclude that the certificate of title that allowed the defendants to repossess the Mercedes without liability for conversion does not apply to Penttala's personal property that was taken with the vehicle. We note further that the fact that Hobbs later returned the property does not defeat the claim of conversion. The fact of the return goes to the question of Penttala's damages.
 "[I]n Brown v. Campbell, 536 So.2d 920, 921
(Ala. 1988), we held that the tort of conversion is complete when the property is converted. Moreover, we stated that 'recovery of the property by the plaintiff does not bar a suit for conversion but merely reduces the plaintiff's damages by the value of the property at the time of its return.' Brown, 536 So.2d at 922."
 Rice, supra, 608 So.2d at 716. See also Simmons Mach. Co. v. M M Brokerage, Inc., 409 So.2d 743 (Ala. 1981).
Accordingly, the summary judgment as to the conversion of Penttala's personal property contained in the Mercedes is due to be reversed.
 II. Invasion of Privacy
Our Supreme Court recently set out the legal definition of invasion of privacy in Carter v. Innisfree Hotel, Inc.,661 So.2d 1174 (Ala. 1995), as follows:
 "This Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities. Nipper v. Variety Wholesalers, Inc., 638 So.2d 778
(Ala. 1994); Phillips v. Smalley Maintenance Services, Inc., 435 So.2d 705 (Ala. 1983); Alabama Electric Co-operative, Inc. v. Partridge, 284 Ala. 442, 225 So.2d 848 (1969). One may invade another's privacy through either an intrusion upon a physical space, such as a trespass, or by an invasion of one's 'emotional sanctum'; the law prohibits a wrongful intrusion into either of these areas of privacy. Phillips, supra. In defining the invasion of privacy tort, the Phillips Court quoted comment b to Restatement (Second) of Torts § 652B (1977):
 " 'The invasion may be physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiffs room in a hotel or insists over the plaintiffs objection in entering his home. It may also be use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs window with binoculars or tapping his telephone wires. It may be by some other form of investigation or examination into his private concerns. . . .'
"Phillips, 435 So.2d 705, 710-11 (Ala. 1983)."
661 So.2d at 1178.
Our examination of the record indicates that in addition to the seizure of Penttala's purse, Price-Williams undertook a surveillance of Penttala's life in order to locate the Mercedes and repossess it. That surveillance included following Penttala, coming onto Penttala's property, and inspecting cars other than the Mercedes on the property. During the surveillance, Price-Williams also questioned Penttala's neighbors about how she had obtained possession of the Mercedes.
In this case, the defendants did not present any evidence beyond their assertion of title to the Mercedes to show that they were entitled to a judgment as a matter of law on Penttala's claim for invasion of privacy. The defendants presented no evidence or legal analysis that shows that their superior title to the Mercedes invalidates Penttala's privacy claim as a matter of law. The fact of the defendants' superior title to the Mercedes, standing alone, does not eliminate any question of fact as to whether the defendants wrongfully intruded into Penttala's private activities. See, e.g.,Hogin v. Cottingham, 533 So.2d 525 (Ala. 1988).
The first requirement for the party moving for summary judgment is "to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does notshift to the opposing party to establish a genuine issue ofmaterial fact until the moving party has made a prima facieshowing that there is no such issue of material *Page 142 fact" Berner, supra, 543 So.2d at 688. (Emphasis added.) On the record before us, the defendants have failed to make a prima facie showing that there is no issue of material fact as to Penttala's claim of invasion of privacy. Absent evidence to shift the burden to Penttala, the summary judgment on the claim of invasion of privacy must be reversed.
The summary judgment as it relates to the conversion of the Mercedes automobile is affirmed; as it relates to the conversion of Penttala's personal property and her claim of invasion of privacy, it is reversed, and the cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.